BOYNTON CAB COMPANY, Appellant, vs. SCHROEDER and INDUSTRIAL COMMISSION, Respondents.

*February 4—March 11, 1941.*

For the appellant there was a brief by *Dougherty, Arnold & Kivett,* attorneys, and *Suel O. Arnold* and *Michael H. Keelan* of counsel, all of Milwaukee, and oral argument by *Mr. Keelan* and *Mr. Arnold.*

*Stanley Rector* and *Arthur Barber,* both of Madison, for the respondent Industrial Commission.

Briefs *amici curiæ* were filed by *E. L. Wingert* of Madison, on behalf of the State Advisory Committee on Unemployment Compensation; by *Padway, Goldberg & Tarrell* of Milwaukee, on behalf of the Wisconsin Federation of Labor; and by *R. M. Stroud* of Madison, on behalf of the Wisconsin Manufacturers Association.

FRITZ, J.   The Boynton Cab Company appeals from a judgment affirming a decision of the Industrial Commission by which it adopted and affirmed a decision by an appeal tribunal designated under sec. 108.09 (3), Stats., which allowed unemployment benefits under ch. 108, Stats., to the defendant John L. Schroeder.   He had been employed as a

taxicab driver by appellant from December 6, 1938, until he was discharged on March 7, 1939. He filed a claim for unemployment benefits, and in response to an inquiry made by the commission under sec. 108.09 (1), Stats., appellant rejected the claim by a letter stating,—

"John L. Schroeder was discharged on March 7, 1939, for his entire bad record of violations of company rules; had been given many warnings for these violations which are as follows:

"1938: Earnings per mile below average for December. Total bookings below average for December.

"1939: January 8, warned about loafing on duty and hanging around night clubs instead of tending to business. . . .

"Checking in short, February 3, 20, 27. Warned. Earnings per mile below average for January and February."

A deputy designated by the commission under sec. 108.09 (2), Stats., investigated the disputed claim and made an "initial determination" that Schroeder's discharge was not for such misconduct as to bar him under par. (a) of sec. 108.04 (4), Stats., from receiving unemployment benefits. Thereupon, under and in accordance with sec. 108.09 (3) to (5), Stats., appellant requested a hearing on the disputed claim; and the commission designated an appeal tribunal, which held a hearing and, upon the sworn testimony received on a trial *de novo,* made findings of fact and affirmed the deputy's "initial determination" and allowed benefits accordingly. Upon appellant's petition the commission reviewed the record made before the tribunal, and adopted and affirmed the tribunal's finding and decision, including the allowance of benefits. Appellant then brought an action in the circuit court to set aside the commission's determination and, upon the entry of judgment affirming the determination, this appeal was taken from the judgment.

The only error assigned by appellant is that the court erred in affirming the commission's findings that the failure of

Schroeder to conform to the standards of earnings set by appellant, and his violation of appellant's rules with respect to "checking in short" and leaving his cab unattended on the public streets, did not constitute misconduct within the meaning of sec. 108.04 (4) (a), Stats. But in connection therewith appellant also claims that, because there was evidence which established that Schroeder left his taxicab unattended on the streets in violation of appellant's rules, the evidence does not sustain the commission's findings that he was not discharged for misconduct within the meaning of sec. 108.04 (4) (a), Stats. In relation to this claim it appears from the record that appellant did not specify in its rejection of Schroeder's claim that he was discharged for leaving his cab unattended on the streets; and no finding on that particular subject was made by the tribunal. There was evidence to the following effect: That on January 8, 1939, Schroeder parked his cab from 4 p. m. until 4:30 a. m. at the Terrace Cafe, a night club; that appellant's rules forbade the parking of a cab on the streets by an employee except while he was eating, and Schroeder knew of the rule; but that he claimed he was ill that evening and went to his room in a near-by house and fell asleep, and because of this occurrence his cab remained on the street until 4:30 a. m. Under this evidence, it was within the province of the tribunal to find either that Schroeder intentionally left the cab unattended on January 8, 1939, because he loafed and hung around a night club, or that it was left on the street because he had become ill and fallen asleep at his room. The tribunal's statement in its findings that, "It was not established that the poor record of the employee was due to loafing or that he failed to perform his work to the best of his ability," discloses that the tribunal was *not* convinced that Schroeder loafed or hung around night clubs and had a poor record by reason thereof, and that the leaving of the cab unattended on January 8th was due to such misconduct. However, in any event, the tribunal's

finding that he "was not discharged for misconduct connected with his employment within the meaning of sec. 108.04 (4) (a) of the statutes" is applicable also to his conduct in leaving the cab unattended on January 8th for two reasons. First, because appellant did not specify that conduct as a ground for the discharge in appellant's written rejection of Schroeder's claim; and second, because the tribunal could rightly find that the discharge on March 7, 1939, was not for a violation which had occurred on January 8th, as to which appellant then had knowledge, but did not then discharge the employee.

In respect to the alleged violation of appellant's rules by "checking in short," the proof was to the following effect. By the term "checking in short" is meant the practice on the part of a number of drivers of sometimes holding out, contrary to appellant's printed instructions and bulletins, part of their collections which they were to turn in to appellant at the end of their daily working period, and of turning in, in lieu of the amount so withheld, a pink slip indicating the amount withheld. These slips were supposed to be approved by a supervisor, but he was not on duty when the night drivers, such as Schroeder was, were to turn in their collections. Amounts so withheld were deducted by appellant from the employee's wages. Under this practice Schroeder had checked in short and indicated the amount on pink slips which he turned in on February 3, 20, 27, and March 3, 1939. Although there was some conflicting evidence, it reasonably admitted of the tribunal's findings that,—

"Among numerous other instructions, statements, etc., which appeared on the trip sheets which each taxi driver used in his daily work was one which read, 'Don't check in short.' Actual practice, however, was at considerable variance with this instruction. The day drivers frequently 'checked in short' at the end of their shift after receiving permission from their superior. However, when the night drivers finished their shift, there was no one present to give permission. It was,

therefore, the general practice for the night drivers to fill out 'short slips' which were honored by the employer's cashier. In accordance with this practice the employee, who worked nights, on several occasions, 'checked in short.' By reason of this practice and in the absence of any specific warnings to the employee to stop this practice, it cannot be found that the employee's conduct in 'checking in short' amounted to improper conduct constituting a lack of regard for his duties and obligations;"

and also the general finding, which was applicable alike to all findings in relation to Schroeder's conduct, that he was not discharged for misconduct within the meaning of sec. 108.04 (4) (a), Stats. In view of the fact that the "checking in short" practice had been tolerated by appellant notwithstanding its regulations and bulletins to the contrary, and the absence of any specific warnings to Schroeder to stop the practice, the tribunal and also the commission was warranted in concluding that it could not be found that Schroeder's conduct in checking in short amounted to improper conduct constituting a lack of regard for his duties and obligations.

In relation to the contention that Schroeder's failure to measure up to appellant's efficiency standards constituted misconduct, the evidence established, as the tribunal found, that he worked as a taxi driver for appellant for about three months; that his earnings per mile and daily receipts from the operation of his cab were below the standards which the appellant considered satisfactory; and that he was discharged on that ground. But the evidence also warranted the tribunal's determination that it "was not established that the poor record of the employee was due to loafing or that he failed to perform his work to the best of his ability. The employee's failure to attain the standard set by the employer was due at most to inefficiency." In this connection the tribunal concluded that "mere inefficiency does not constitute misconduct;" and there is also likewise applicable its finding that Schroeder was not discharged for misconduct within the

meaning of sec. 108.04 (4) (a), Stats. As neither mere inefficiency on the part of Schroeder because of which his earnings and daily receipts were below the standards which appellant considered satisfactory, nor his "checking in short," which did not amount to improper conduct constituting a lack of regard for his duties and obligations, constituted conduct evincing such wilful or wanton disregard of appellant's interests as is found in deliberate violations or disregard of standards of behavior which an employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or the employee's duties and obligations to his employer, the conduct for which Schroeder was discharged was not misconduct within the intended meaning of that term as used in sec. 108.04 (4) (a), Stats., which is construed in *Boynton Cab Co. v. Neubeck, ante,* p. 249, 296 N. W. 636.

It follows that the court did not err in affirming the decision of the Industrial Commission which affirmed the tribunal's decision and allowed unemployment benefits to Schroeder.

*By the Court.*—Judgment affirmed.