JONES *v.* EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS —MISCONDUCT CONNECTED WITH WORK.

Behavior of an employee that constitutes misconduct connected with work, justifying disqualification from unemployment compensation benefits under the employment security act is an act done with wrongful intent or evil design which imports an exercise of the will or a breach of those standards of conduct reasonably applicable to the industrial task assigned, rather than of those standards of ethics and morals applicable to mankind in general (CLS 1956, § 421.29).

2. MASTER AND SERVANT—RULE OF SELECTION.

An employer's rule which does not govern an employee's conduct connected with his work, but rather sets forth a condition of employment and continuance therein, is a rule of selection, not a rule of conduct.

3. UNEMPLOYMENT COMPENSATION—MISCONDUCT CONNECTED WITH WORK—VIOLATION OF RULE.

Conduct of an employee which violates a rule of selection of employer may entitle employer to discharge employee, but such discharge is not for misconduct connected with work as contemplated by employment security act so as to disqualify him from unemployment compensation benefits (CLS 1956, § 421.29).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–5] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 38.

What amounts to "misconduct" which precludes benefits under unemployment compensation act to discharged employees. 146 ALR 243.

[2] 35 Am Jur, Master and Servant § 83.

[4] Conduct or activities of employees during off-duty hours as misconduct barring unemployment compensation benefits. 89 ALR2d 1089.

4. SAME—MISCONDUCT CONNECTED WITH WORK—DISQUALIFICATION
FOR BENEFITS.

An employee who, while off duty, deposited a half-dollar coin in
a change-making machine on his employer's premises and, when
the machine disgorged more than a half-dollar in change, put
the excess in his pocket, intending, as he said, to give the
excess to his employer the next day, but who was discharged
soon after reporting for work for his act of taking the change
with him, *held*, not guilty of misconduct connected with his
work within the meaning of employment security act so as to
disqualify him from unemployment compensation benefits (CLS
1956, § 421.29).

5. SAME—MISCONDUCT CONNECTED WITH WORK—DISQUALIFICATION
FOR BENEFITS.

Misconduct within the meaning of an unemployment compensation
act excluding from its benefits an employee discharged for
misconduct must be an act of wanton or wilful disregard of
the employer's interest, a deliberate violation of the employer's
rules, a disregard of standards of behavior which the employer
has the right to expect of his employee, or negligence in such
degree or recurrence as to manifest culpability, wrongful intent,
or evil design, or show an intentional and substantial disregard
of the employer's interest or of the employee's duties and
obligations to the employer.

Appeal from Muskegon; Beers (Henry L.), J.
Submitted Division 3 April 5, 1966, at Grand Rapids.
(Docket No. 148.)   Decided September 27, 1966.   Re-
hearing denied November 17, 1966.

C. B. Jones applied for unemployment compensa-
tion payments. After he was held qualified, a re-
determination was made that he was disqualified.
This redetermination was affirmed on successive
appeals by Jones to a referee, to the appeal board
of the Michigan Employment Security Commission,
and to the Muskegon circuit court. Claimant ap-
peals. Reversed and remanded.

*Marcus, McCroskey, Libner, Reamon, Williams
& Dilley (Jerry S. McCroskey,* of counsel), for
claimant.

*Landman, Grimm, Bradbury & Laurin* (*Fredric A. Grimm,* of counsel), for employer Browne Morse Company.

FITZGERALD, J. The late Judge WATTS was a member of the panel to whom this case was submitted for determination, but did not participate in the preparation of this opinion.

Plaintiff, C. B. Jones, an employee of the Browne Morse Company from July 26, 1962, until December 12, 1962, was discharged for an event which had occurred in the plant the previous evening.

Shortly after midnight, plaintiff had finished his shift and had punched out. He and a fellow employee decided to have a cup of coffee in the plant's lunchroom before leaving the plant. Plaintiff had no small change for the coffee-vending machine, so he deposited a half dollar into a change-vending machine which belonged to an independent vending company. The vending machine would not work and plaintiff struck the side of the changer with his hand once or twice. The machine discharged 33 dimes by plaintiff's admission; the referee simply found the number to be in excess of 5.

The plant guard was aware of this event and approached the plaintiff but said nothing concerning the extra change, later reporting the incident to the plant superintendent.

Plaintiff put the money into his pocket, had his coffee and left the plant.

The next afternoon, he returned to his shift claiming he had planned to see someone about the incident at his first break which was 6 p.m. However, he was called to the office by the plant superintendent and questioned before he had an opportunity to approach anyone about this matter of his own accord.

Plaintiff admitted he took the money but refused to return it when the amount seemed to be in question, the superintendent claiming first $20 was missing and then later $18. Plaintiff and the fellow employee were fired. The fellow employee was later reinstated.

Plaintiff applied for unemployment compensation and in a determination issued January 4, 1963, he was held qualified. In a redetermination issued on February 6, 1963, the original decision was reversed and plaintiff was held ineligible. The matter was appealed to Referee Snow who affirmed the ineligibility of the plaintiff, saying plaintiff's failure, until confronted, to turn the money over to the company at the beginning of the shift and the failure to bring all the money that had come out of the machine with him to the plant "tends to demonstrate his intent not to return the money."

The referee disposed of plaintiff's contention that the machine did not belong to the company by concluding:

"However, these machines were placed on the company property with the knowledge and consent of the company. The machine did not belong to the claimant and by his failure, at least, on October the 12th, to report the fact that the machine had returned more than the 50 cents that he had put in the machine demonstrated not only a wilful and wanton disregard of the employer's interest, but a wrongful intent and an evil design. The claimant was, at that point, taking property out of the plant which did not belong to him and keeping it without making any attempt to return it to its rightful owner. Such conduct on the part of the claimant must be, therefore, considered as misconduct within the definition of that term as set forth above."

Plaintiff appealed the referee's decision to the Michigan employment security appeal board which affirmed the referee's decision without opinion.

Plaintiff then appealed to the Muskegon county circuit court which affirmed the appeal board, holding the factual determinations of the hearing referee and the appeal board were not against the great weight of the evidence nor were the findings contrary to law—therefore he had no power to interfere with the decision.

Plaintiff now appeals to this Court to secure unemployment benefits which had been denied him by the commission, on the grounds he had been discharged for misconduct.

The Court must determine if plaintiff's act of taking the dimes from the vending machine constitutes "misconduct" within the contemplation of CLS 1956, § 421.29 (Stat Ann 1960 Rev § 17.531) so as to disqualify him from unemployment benefits.

The Court in *Bell* v. *Employment Security Commission* (1960), 359 Mich 649, decided that sleeping on the job constituted "misconduct connected with work." The criteria used to arrive at this conclusion were the requirement of "wrongful intent or evil design which import an exercise of the will," or "a breach of those standards of conduct reasonably applicable to the industrial task assigned, rather than of those standards of ethics and morals applicable to mankind in general." See, also, *Cassar* v. *Employment Security Commission* (1955), 343 Mich 380 at p 389.

The present plaintiff was off duty at the time of the vending machine incident. The depositing of the half dollar was not related to his employment. The employer, having an actual possession or custody of the machine, has an admitted interest in preventing thefts from vending machines placed upon its premises and would be justified in reclaim-

ing any amount taken from the machine. *People* v. *Cabassa* (1930), 249 Mich 543. The reason plaintiff refused to return the coins he had taken was because the amount claimed by the employer was in excess of what plaintiff was claimed to have carried away.

The plaintiff's attorney offered to return $3.30 (which is the amount presently claimed by the vending company) to the owner of the machines in the presence of the plant superintendent. This offer was not accepted.

The distinction between a rule of selection and one of conduct as made in *Reed* v. *Employment Security Commission* (1961), 364 Mich 395, is applicable here although it does not appear that the company has an explicit practice as to what procedure employees were to follow when extra coins were released by a machine.

A rule of selection "does not govern an employee's conduct connected with his work, but, rather, sets forth a condition of employment and continuance therein."

The plaintiff, C. B. Jones, was expected to return the coins released by the machine immediately. Whether this was a rule or practice of the company is not relevant. The plaintiff readily admitted he took the extra coins and only refused to return any coins while the amount taken was in dispute. Although his conduct was not such as to meet with his employer's standards and breach of the expected conduct may entitle the employer to discharge his employee, such discharge is not for misconduct connected with his work as contemplated by the statute. *Reed* v. *Employment Security Commission, supra.*

The plaintiff's misconduct is not such as defined by Michigan cases on the subject.

"Misconduct within the meaning of an unemployment compensation act excluding from its benefits

an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds, § 38, pp 541, 542.

See *Detroit Gravure Corporation* v. *Employment Security Commission* (1962), 366 Mich 530, 533.

Reversed and remanded to circuit court for remand by it to the appeal board and disposition there in accord herewith.

BURNS, P. J., concurred.