700 So.2d 107 (1997)
Annie M. HALL, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Sunrise Community, Inc., Appellees.
No. 96-4943.
District Court of Appeal of Florida, First District.
October 8, 1997.
Carolyn D. Cummings of Cummings, Hobbs & Wallace, P.A., Tallahassee, for Appellant.
Helena Tetzeli and Steven M. Weinger of Kurzban, Kurzban, Weinger and Tetzeli, P.A., Miami, for Appellee Sunrise Community, Inc.
PER CURIAM.
The appellant challenges the order of the Unemployment Appeals Commission, which affirmed the decision of the appeals referee, denying her unemployment compensation benefits on the ground that her actions constituted misconduct as defined in section 443.036(26), Florida Statutes (1995).[1] We do not question the employer's discharge of appellant, which is not the subject of this appeal, but only reiterate that "[w]hether an employer has the right to terminate an employee's employment and whether a terminated employee meets the disqualification criteria set out in the unemployment compensation statute are separate issues." Lusby v. Unemployment Appeals Comm'n, 697 So.2d 567, 568 (Fla. 1st DCA 1997).[2] As to the *108 second considerationwhether appellant met the disqualification criteria in section 443.036(26)we conclude as a matter of law that the finding of "negligence and carelessness" in the Notice of Decision of Appeals Referee did not rise to the level of misconduct as contemplated in the statute. We are constrained to reach this conclusion by prior decisions interpreting "misconduct" under this section,[3] and by section 443.031, Florida *109 Statutes (1995), which provides in pertinent part:
This chapter shall be liberally construed to accomplish its purpose to promote employment security ... and to provide through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment.
See Webb v. Rice, 693 So.2d 1109, 1111 (Fla. 3d DCA 1997)(stating that courts should liberally construe the statute in favor of the claimant in determining whether a claimant's actions constitute misconduct, and that misconduct regarding company policies usually involves repeated violation of explicit policies after several warnings). We, therefore, reverse the order of the Unemployment Appeals Commission and its affirmance of the denial of unemployment compensation benefits.
ERVIN and BENTON, JJ., concur.
DAVIS, J., dissents with opinion.
DAVIS, Judge, dissenting.
For the reasons expressed in dissent in Lusby v. Unemployment Appeals Comm'n, 697 So.2d 567, 568-69 (Fla. 1st DCA 1997), I would affirm in this case. Indeed, this is an even more compelling case for affirmance than was Lusby. In Lusby, the majority chose to construe the facts as proving only a single incident of misconduct and then invoked the line of cases in which a single incident of misconduct was held to be insufficient as a matter of law to disqualify the terminated employee from receipt of unemployment benefits. Compare Easton v. Unemployment Appeals Comm'n, 693 So.2d 712 (Fla. 4th DCA 1997)(single incident of poor judgment with which employee was charged, pouring a glass of juice in a room other than the employee cafeteria in contravention of employer's policy, held insufficient as a matter of law to disqualify the claimant from benefits) and Grossman v. J.C. Penney Co., 689 So.2d 1206 (Fla. 3d DCA 1997)(citing cases involving single instances of poor judgment in holding that employee's unknowing violation of policy against making store purchases while on a break was insufficient as a matter of law to constitute disqualifying misconduct) with Freddo v. Unemployment Appeals Comm'n, 685 So.2d 874 (Fla. 2d DCA 1996)(employee was discharged for multiple acts of improper conduct, but appeals referee found as a matter of fact that those acts were insufficient to justify the denial of unemployment benefits; the district court reversed the ruling of the UAC, because the Commission improperly reweighed the evidence and concluded that Freddo's acts constituted disqualifying misconduct) and Lewis v. Unemployment Appeals Comm'n, 498 So.2d 608 (Fla. 5th DCA 1986)(Lewis was terminated for four listed acts, but the appeals referee determined he was not guilty of disqualifying misconduct; the UAC reversed, finding Lewis committed "acts or omissions that constitute misconduct within the meaning of the law ...". The district court reversed, because the referee's factual finding was supported by the record and should not have *110 been disturbed by the UAC.). Lusby cannot justify the result reached by the majority in the instant case because it is undisputed that this employee was charged with several acts of negligence in the performance of her duties.
The question whether these multiple acts of negligence were so culpable as to amount to disqualifying misconduct appears to me to be a question of fact. See, e.g., Folden v. Unemployment Appeals Comm'n, 696 So.2d 537 (Fla. 5th DCA 1997). In Folden the appeals referee, the finder of fact, found that the discharged nurse's negligence was not egregious enough to constitute disqualifying misconduct. The unemployment appeals commission rejected that finding of fact, and denied benefits. The district court reversed the order of the UAC, because the original factual determination that the conduct was not egregious enough to disqualify the claimant from receiving benefits was supported by competent substantial evidence and therefore the UAC erred in rejecting the finding.
There was competent substantial evidence to support the finding of the appeals referee in the instant case that Nurse Hall's actions were so egregious as to rise to the level of disqualifying misconduct.[4] Therefore, the UAC acted properly in affirming that finding, and this court should also be required to affirm the finding of fact by the appeals referee that the claimant's actions constituted disqualifying misconduct. See Scholastic Book Fairs, Inc. v. Unemployment Appeals Comm'n, 671 So.2d 287 (Fla. 5th DCA 1996). In Scholastic, the court stated that "the factfinder is the appeals referee. The appellate court, as well as the Commission, must accept those findings unless they are not based on competent substantial evidence." Id. at 288. Therefore, the court ruled, in view of the conflicting evidence on the question whether the employee's acts constituted disqualifying misconduct, the court was required to affirm the factual finding that the employee's actions were not so egregious as to disqualify him from receiving unemployment compensation benefits.
This court's opinions in Lusby v. Unemployment Appeals Comm'n, 697 So.2d 567 (Fla. 1st DCA 1997), and Smith v. Krugman-Kadi, 547 So.2d 677 (Fla. 1st DCA 1989), appear to authorize the majority's analysis, permitting this court to reweigh the facts and determine as a matter of law whether or not the appellant's actions constituted disqualifying misconduct. However, even if that is the appropriate standard of review, I must dissent from the result reached by the majority. In my opinion, the appeals referee was eminently correct in deciding that the acts with which Nurse Hall was charged, which she did not dispute took place, were sufficient to constitute the sort of culpable level of negligence which justifies the denial of unemployment compensation benefits.[5] Accordingly, I dissent.
NOTES
[1] An employee is not entitled to unemployment compensation benefits if the employer discharges the employee for misconduct connected with work. § 443.101(1)(a), Florida Statutes (1995). Section 443.036(26), Florida Statutes (1995), which defines misconduct, provides:

(26) MISCONDUCT."Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligation to his employer.
[2] Accord Cooks v. Unemployment Appeals Comm'n, 670 So.2d 178, 180 (Fla. 4th DCA 1996)(stating that "misbehavior serious enough to warrant an employee's dismissal is not necessarily serious enough to sustain forfeiture of compensation benefits"); Livingston v. Tucker Constr. & Eng'g, Inc., 656 So.2d 499, 500 (Fla. 2d DCA 1995); Fredericks v. Florida Dep't of Commerce, Indus. Relations Comm'n, 323 So.2d 286, 288 (Fla. 2d DCA 1975)(holding that claimant's negligent failure to make sure his supervisor understood that he was available to go back to work may have justified his being fired, but it was not carelessness of such a degree "as to be equivalent to an intentional and substantial disregard of his duties and obligations to his employer").
[3] See Lusby, 697 So.2d 567, 568 (holding that although the employer had good cause to terminate employment, claimant neither evinced "willful or wanton disregard of an employer's interests" nor manifested "negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design" such as to constitute misconduct under section 443.036(26)); Tedder v. Florida Unemployment Appeals Comm'n, 697 So.2d 900 (Fla. 2d DCA 1997)(holding that claimant's removal of service charges from her account in violation of bank's policy did not rise to the level of misconduct since she did not have requisite intent); Folden v. Unemployment Appeals Comm'n, 696 So.2d 537 (Fla. 5th DCA 1997)(holding that although claimant, a licensed practical nurse, was negligent in assuming, without checking, that co-employee had returned to duty on nursing floor before claimant took her break (leaving the floor unattended), she did not act with willful or wanton disregard of employer's interests, nor had she received warnings specifically for the action for which she was fired and that, therefore, she did not commit misconduct disqualifying her from receipt of benefits); Gilbert v. Department of Corrections, 696 So.2d 416, 417 (Fla. 1st DCA 1997)(stating that the employer has the burden of proving that the act or acts complained of constitute misconduct sufficient to disqualify the employee from receiving unemployment benefits); Gerhart v. Florida Unemployment Appeals Comm'n, 694 So.2d 880 (Fla. 2d DCA 1997)(holding that evidence did not support finding that claimant engaged in misconduct when she failed to return company documents, which she claimed belonged to her); Easton v. State, Unemployment Appeals Comm'n, 693 So.2d 712 (Fla. 4th DCA 1997)(holding that claimant's pouring himself a glass of grapefruit juice contrary to employer policy was not sufficient to disqualify him from receiving unemployment compensation benefits); Grossman v. J.C. Penney Co., 689 So.2d 1206 (Fla. 3d DCA 1997)(holding that although employer had good reason to fire claimant, when she violated company policy by making store purchases on her break, she was not aware that such action caused her employer any concern until she was discharged, and the act did not reflect a substantial disregard of her employer's interests such as to preclude unemployment compensation benefits); Howden v. Pronet, Inc., 688 So.2d 1001 (Fla. 2d DCA 1997)(holding that employer failed to show that claimant's taking her boyfriend on company-sponsored trip despite employer's denial of her request to take him was willful or wanton disregard of her employer's interests constituting misconduct, where she explained that she wanted her boyfriend to come because she experienced panic attacks during flights and employer presented no evidence that the boyfriend interfered with claimant's participation in company's activities or that employer was required to spend any money on his behalf); Freddo v. Unemployment Appeals Comm'n, 685 So.2d 874 (Fla. 2d DCA 1996)(holding that even if claimant violated company policy by asking personal favors of co-workers, his behavior did not constitute willful disregard of employer's interests); Scholastic Book Fairs, Inc., Great Am. Div. v. Unemployment Appeals Comm'n, 671 So.2d 287 (Fla. 5th DCA 1996)(holding that claimant's joking with vendor about padding expense account and his attempt to find out about prices and options regarding possible acquisition of a computer did not constitute misconduct so as to disqualify him from receiving unemployment compensation benefits); Fiedler v. Burdines, Inc., 654 So.2d 1276 (Fla. 2d DCA 1995)(holding that claimant's actions in giving 25% discount on item that had been on sale previous weekend but was no longer on sale and of giving 10% discount on wrinkled item were not in willful or wanton disregard of employer's interest and could not be characterized as carelessness or negligence of such recurrence as to meet the test of misconduct); Clifford v. Mile Marker 82 Ltd. Partnership, 623 So.2d 632 (Fla. 3d DCA 1993)(holding that where claimant admitted that he was not able to perform the assigned tasks in the time employer deemed adequate, such admission could only give rise to the inference that he was physically unable to complete assigned tasks or that he was generally incompetent, but such an inference should not preclude unemployment compensation benefits in the absence of evidence of misconduct); Smith v. Krugman-Kadi, 547 So.2d 677, 678, 680 (Fla. 1st DCA 1989)(holding that employee's failure to follow office policy by disclosing memorandum to person to whom it was written, adjusting time card to account for another employee's lunch time, and helping another employee determine her overtime hours was not misconduct); Daniels v. Florida Unemployment Appeals Comm'n, 531 So.2d 1047, 1048 (Fla. 2d DCA 1988)(holding that as a matter of law, nurse's aide's action in leaving patient on a bedside commode was not misconduct, where she made decision, after telling another nurse's aide that she had placed the patient on the commode, to stop a second patient who was leaving the facility, rather than remain with patient on commode, even though while claimant was away, the first patient fell from the commode and sustained a cut to her forehead, which required stitches; and stating that claimant's actions were "at most, bad judgment and not misconduct"); Lewis v. Unemployment Appeals Comm'n, 498 So.2d 608 (Fla. 5th DCA 1986)(holding discharged employee not disqualified from unemployment compensation benefits because his termination resulted more from inability than from intentional and substantial disregard of employer's interest); Davis v. Florida Unemployment Appeals Comm'n, 472 So.2d 800, 802 (Fla. 3d DCA 1985)(stating that "an employee's exercise of bad judgment, causing an otherwise proper employment dismissal, does not, without more, constitute `misconduct' ... and therefore cannot preclude the payment of unemployment compensation benefits"); Spaulding v. Florida Indus. Comm'n, 154 So.2d 334 (Fla. 3d DCA 1963)(holding that failure of a supermarket cashier to ring up promptly an "exact amount" payment received while she was checking out another customer, although it may have shown inadvertence, ordinary negligence, or poor judgment and inattention, did not amount to negligence of such a degree as to manifest culpability and did not constitute "misconduct" disqualifying claimant from receipt of unemployment compensation benefits).

At oral argument appellees' attorney cited Ford v. Southeast Atlantic Corp., 588 So.2d 1039 (Fla. 1st DCA 1991) for the proposition that repeated actions in direct violation of company policy are not necessary to constitute misconduct within the meaning of the unemployment compensation statute. However, appellant's attorney argued in her rebuttal that Ford was distinguishable, because in that case appellant was discharged solely because he tested positive for cocaine, a result which implied willfulness and intentional disregard of employer's policies, whereas in the instant case, appellant had not manifested any intent to disobey policies, nor had the appeals referee found any such intentional disregard. We agree with appellant's attorney that Ford does not control the instant appeal.
[4] It is undisputed that Nurse Hall violated numerous policies of the employer and accepted standards of nursing care. For example, she left a medication cart unattended in one incident, and, in another, she failed to change her gloves before closing the button on a feeding tube after touching a patient's urine soaked clothing.
[5] Nurse Hall was employed at a facility caring for developmentally disabled individuals. In addition to the incidents referred to above, she admitted having treated a patient with an incorrect concentration of a medication which had been mislabeled by the pharmacy, as well as violating the policy requiring her to report the incorrectly labeled medication to the attending physician or director of nursing, and also does not dispute the finding of fact that she left a gastrostomy tube uncapped on top of the medication cart while medication was being prepared. Moreover, Nurse Hall does not dispute the finding of fact that she was aware of the correct procedures and policies.