PER CURIAM.
Michelle P. Mitchell appeals the Unemployment Appeals Commission’s (UAC) Order which reversed the appeals referee’s decision.
Mitchell began employment with Eastern Financial Credit Union on February 22,1988. At the time of her termination, Mitchell was employed as a special services representative. On March 10, 1997, Martha Maxey, special services supervisor, found a ripped letter in a bin to be shredded. Mitchell had written and signed the discarded letter. Because the letter provided information about a Credit Union member’s alleged good standing, Maxey brought the letter to her manager, Eva Clementi. Providing references of good standing was not one of Mitchell’s responsibilities. Maxey accessed the relevant account information to determine whether the representation of good standing was accurate. They determined that it was not.
Maxey, Clementi and a representative from the Credit Union’s human resources department met with Mitchell to discuss the letter she had written. Mitchell advised the Credit Union that a member had called her and asked for the letter because he was getting an apartment and needed the letter. Mitchell admitted that she personally knew the member and used to be a joint account holder with him on the account in question. The member was Mitchell’s former boyfriend. The Credit Union asked Mitchell to walk through the process she used to verify the status of the member’s standing. Mitchell advised that she consulted Iris Brown, whose job it was to conduct these types of credit checks and who actually typed the letter at issue here. After reviewing the relevant computer information Mitchell and Brown determined that the individual in question had a positive balance and issued the letter.
On March 12, 1997, the Credit Union terminated Mitchell for providing false information and compromising the integrity of the Credit Union. On March 22, 1997, the appeals referee issued a determination finding that: Mitchell was discharged for reasons other than misconduct connected with work; that evidence showed that Mitchell was careless in the performance of duties that she was not normally entrusted with; that she used poor judgment in this isolated incident, and that mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertence or ordinary negligence in isolated incidences and/or good faith errors in judgment or dis *785 cretion are not to be deemed misconduct within the meaning of the statute.
The Credit Union then filed an appeal to the UAC, and the UAC issued an Order reversing the finding of the appeals referee. The UAC stated that Mitchell’s actions exceeded her authority and could have resulted in a release of false information to potential creditors, exposed the Credit Union to potential liability and were contrary to the Credit Union’s interest. Thus, Mitchell was discharged for misconduct connected with work within the meaning of the law. This appeal followed.
We agree with Mitchell that the decision of the hearing examiner was supported by substantial competent evidence and was legally correct. After listening to all of the testimony and reviewing all of the evidence, the hearing examiner correctly determined that although Mitchell acted carelessly she was not guilty of - misconduct. See generally Doyle v. Florida Unemployment Appeals Comm’n, 635 So.2d 1028 (Fla. 2d DCA 1994). Section 443.036(26), Florida Statutes (1997), defines misconduct as follows:
(a) Conduct evincing such willful or wanton disregard of an employer’s interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his or her employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his or her employer.
Under this definition it is clear that Mitchell was not guilty of misconduct. It is undisputed that she was improperly acting outside the scope of her employment. Nevertheless, she sought out the assistance of one whose job it was to perform the task at issue. Indeed, the letter which ultimately resulted in Mitchell’s discharge was prepared by an employee whose job it would have been to prepare it. Additionally, there is no evidence that Mitchell had any personal stake in this matter. Although the applicant was a former boyfriend, the record reflects that she
had ended that relationship some five years earlier. See Gunther v. Barnett Banks, Inc., 598 So.2d 243, 245 (Fla. 2d DCA 1992) (employer has burden of establishing employee’s misconduct; bad judgment does not constitute misconduct within the meaning of the unemployment compensation law); Fredericks v. Florida Dep’t of Commerce, 323 So.2d 286, 288 (Fla. 2d DCA 1975) (to meet burden of proving misconduct on the part of the employee, employer must show more than an employee’s inefficiency, unsatisfactory conduct or failure to perform in the work place). Having reviewed the entire record, we conclude that the UAC erred when it reversed the conclusions of the hearing examiner. Accordingly, we reverse the decision of the UAC and reinstate the conclusions of the hearing examiner.
Reversed.